**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**SHANE GOODWIN,**

                      **Plaintiff,**                 **3:13-cv-395
(GLS)**

               v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                      **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Lachman, Gorton Law Firm | PETER A. GORTON, ESQ. |
| P.O. Box 89 | |
| 1500 East Main Street | |
| Endicott, NY 13761-0089 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | SERGEI ADEN |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
Chief Judge**

## **MEMORANDUM-DECISION AND ORDER**

### **I. Introduction**

Plaintiff Shane Goodwin challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Goodwin's arguments, the Commissioner's decision is reversed and remanded.

### **II. Background**

On September 7, 2010, Goodwin filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since September 1, 2009. (Tr.[1] at 83-89, 172-77.) After his applications were denied, (*id.* at 90-94), Goodwin requested a hearing before an Administrative Law Judge (ALJ), which was held on September 30, 2011, (*id.* at 38-81, 103-06). On January 18, 2012, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-6, 9-37.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 8.)

Goodwin commenced the present action by filing his complaint on April 8, 2013 wherein he sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 12, 13.)

### III. Contentions

Goodwin contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 12 at 8-25.) Specifically, Goodwin claims that the ALJ erred in: (1) determining the severity of his impairments; (2) concluding that his mental impairments do not rise to the level of a listing; (3) assessing the medical opinions of record; (4) adequately considering the effects of his obesity; (5) failing to consider his inability to work on a regular and continuing basis; and (6) failing to obtain the testimony of a vocational expert. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 13 at 5-19.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No.

12 at 2-8; Dkt. No. 13 at 1-2.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Evaluating Medical Opinions

Among other arguments, Goodwin contends that the ALJ failed to properly assess the medical opinions of record. (Dkt. No. 12 at 12-17.) Specifically, Goodwin argues that the ALJ erred in giving "little weight" to the opinion of consultative examiner Justine Magurno, who completed a physical assessment of Goodwin. (*Id.* at 12-13, Tr. at 15-16, 710-15.) Additionally, Goodwin challenges the weight given to treating physician

---

[2] Review under 42 U.S.C. §§ 405(g) and 1383(c)(3) is identical. As such, parallel citations to the regulations governing SSI are omitted.

4

Kiran Talati, and argues that none of the medical opinions of record support the ALJ's determination with respect to Goodwin's mental impairments. (Dkt. No. 12 at 13-17.)

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion.'" *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "'have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or

5

insufficient to lead him to a conclusion of disability.'" *Id*. (citation omitted).

Here, the ALJ determined that obesity is Goodwin's sole severe physical impairment, which limited him to performing medium work.[3] (Tr. at 15, 20.) However, Dr. Magurno diagnosed Goodwin with supraventricular tachycardia and atrial fibrillation, chronic chest pain, migraine headaches, hypoglycemic episodes, and status post left shoulder injury and surgery. (*Id.* at 712.) Dr. Magurno opined that Goodwin could stand and walk for two hours, sit for six hours, and lift and carry ten pounds occasionally. (*Id.* at 712-13.) Additionally, Dr. Magurno opined that Goodwin was unable to participate in any activities except treatment or rehabilitation for six months, at which time he should be reevaluated by his treating physicians prior to his return to work. (*Id.* at 713.) The ALJ gave "little weight" to this opinion because it was not supported by the record. (*Id.* at 15-16, 27.) Specifically, the ALJ noted that the abnormal musculoskeletal and neurological findings of Dr. Magurno were not generally noted by Goodwin's other treating and examining sources. (*Id.* at 15-16, 27;

---

[3] Medium work requires the ability to lift "no more than [fifty] pounds at a time with frequent lifting or carrying of objects weighing up to [twenty-five] pounds." 20 C.F.R. § 404.1567(c). In addition, it requires "standing or walking, off and on, for a total of approximately [six] hours in an [eight]-hour workday." SSR 83-10, 1983 WL 31251, at *6 (1983).

6

*compare id.* at 710-15, *with id.* at 309-11, 345-451, 350-51, 355-56, 358-62, 377-78, 381-82, 427-31, 455-56, 508-09, 513-14, 651-52, 741-43, 1303-04, 1342-43.) Goodwin does not contend that Dr. Magurno's findings were consistent with the other medical evidence of record, but, rather, argues that, as her opinion was the only medical opinion received by the ALJ with respect to Goodwin's physical limitations, the ALJ was required to adopt her opinion. (Dkt. No. 12 at 12-13.) However, as the Commissioner points out, (Dkt. No. 13 at 14-15), in April 2009 Dr. Mamadou Diallo, who examined Goodwin on one occasion, opined that he was capable of performing the full range of physical work activities, (Tr. at 495). Further, in April 2009, Dr. Richard Ryder noted that Goodwin was able to return to work, and, in June 2009, nurse practitioner Ryan Little noted that it was not unsafe for Goodwin to work. (*Id.* at 342-44, 457-58.) Although Goodwin suggests that his obesity led to the restrictions in Dr. Magurno's opinion, (Dkt. No. 12 at 12, 17-18), Goodwin's weight was consistent throughout the record and there is nothing to suggest that his obesity worsened from the time of Dr. Diallo's opinion,[4] (Tr. at 342, 345, 358, 361, 427, 455, 712, 1304, 1343). As "it is the function of the [Commissioner], not [the reviewing

---

[4] Indeed, Dr. Diallo diagnosed Goodwin with obesity. (Tr. at 495.)

7

court], to resolve evidentiary conflicts and to appraise the credibility of witnesses," *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983), the ALJ's decision to discount Dr. Magurno's opinion is legally sound and supported by substantial evidence.[5]  *See* 20 C.F.R. § 404.1527(c)(2), (4).

Turning to Goodwin's mental impairments, the ALJ determined that Goodwin suffers from the following severe impairments: adjustment disorder with depressed mood, impulse control disorder, cannabis dependence, and a history of alcohol dependence.  (Tr. at 15.)  As a result of these impairments, the ALJ determined that Goodwin can perform the mental functions of work for simple and complex tasks, "as long as he is not presented with stress of confrontation, arbitration, or negotiation with co-workers, customers, clients or the general public."  (*Id.* at 20.)  Further, the ALJ concluded that Goodwin "should avoid other extraordinary stress triggering situations such as fast-paced production line work."  (*Id.*)  In making these determinations, the ALJ relied on the opinions of consultative examiner Mary Ann Moore and non-examining medical expert L. Meade.

---

[5] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

(*Id.* at 23-24.)  Dr. Moore examined Goodwin in October 2010 and opined that he is capable of performing simple tasks, but may have some difficulty learning complex tasks.  (*Id.* at 576-81.)  However, Dr. Moore also concluded that Goodwin has "difficulty dealing with stress and becomes easily overwhelmed[,] exhibit[s] anger issues which may cause problems with relating adequately with others," and, due to depression and anger, may have difficulty "making appropriate work decisions and maintaining a regular work schedule."  (*Id.* at 579.)  Thereafter, Meade reviewed the evidence of record and concluded that, although Goodwin "may have difficulty with complex tasks, dealing with stress[,] and relating with others[, h]e retains the ability to perform simple, unskilled work."  (*Id.* at 599.)

The ALJ discounted the other medical opinions of record.  (*Id.* at 17-18, 24-26.)  Specifically, in November 2008, physician assistant Thomas Burkert diagnosed Goodwin with atypical chest pain and anxiety, and opined that he was unable to perform any work activity for six months.  (*Id.* at 496.)  Thereafter, in January 2009, psychologist Robert Russell examined Goodwin and diagnosed him with cannabis dependence, opioid dependence, and a history of alcohol dependence.  (*Id.* at 326-31.)  According to Dr. Russell, Goodwin's "substance abuse difficulties would

9

significantly interfere with his work performance and/or attendance and reliability." (*Id.* at 331.) Dr. Russell assigned Goodwin a Global Assessment of Functioning (GAF) score of fifty, indicating serious symptoms.[6] (*Id.*) Subsequently, social worker Patricia Jordan and psychiatrist Eric Lin co-signed a psychological assessment of Goodwin. (*Id.* at 424-26.) Upon examination, Goodwin's eye contact was fair to good, mood was euthymic, memory functions were fair, and social judgment appeared good. (*Id.* at 425.) However, his affect was sometimes inappropriate to verbal content, and his level of personal insight was fair to poor. (*Id.*) Goodwin was diagnosed with adjustment disorder, intermittent explosive disorder, cannabis dependence, and rule out post-traumatic stress disorder, and assigned a GAF score of fifty. (*Id.*)

In December 2010, Jordan completed a questionnaire and opined that, due to pain, Goodwin is unable to maintain attention and concentration for extended periods of time, maintain a schedule and

---

[6] The GAF Scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004). A score "in the range of forty-one to fifty indicates '[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).'" *Zabala v. Astrue*, 595 F. 3d. 402, 406 n.2 (2d Cir. 2010) (quoting Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000)).

10

regular attendance, sustain an ordinary routine without special supervision, complete a normal work day and work week, and interact appropriately with the general public. (*Id.* at 601-03.) She further opined that Goodwin would be absent more than three days per month due to his mental, medical, and pain conditions. (*Id.* at 602.) Jordan's opinion was subsequently endorsed by treating physician Kiran Talati. (*Id.* at 1383-85.)

In September 2011, Goodwin was examined by psychologist Nathan Hare, a consultative examiner who reviewed the medical evidence of record. (*Id.* at 699-705.) Dr. Hare found Goodwin to have normal motor behavior, normal speech, no evidence of psychosis, and fair attention and concentration. (*Id.* at 701.) However, Goodwin's affect was labile, mood depressed, and his thought content was preoccupied with medical problems and excessive worry. (*Id.*) Additionally, Goodwin's insight and judgment were poor, and his impulse control was poor. (*Id.*) Dr. Hare utilized the Minnesota Multiphasic Personality Inventory-2 (MMPI-2), which indicated "a valid profile . . . similar to individuals who have significant emotional and psychological problems," and concluded that "no further evaluation of malingering symptoms appear[ed] warranted." (*Id.* at 703.)

Dr. Hare diagnosed Goodwin with pain disorder with both medical

11

and psychological components, medical disorder affected by psychological issues, adjustment disorder with depression and anxiety, cannabis dependence, alcohol abuse in remission, and personality disorder NOS with anti-social, avoidant, and dependent features. (*Id.* at 704.) He assigned Goodwin a GAF score of fifty and concluded that he "is not able to do sustained work-related physical or mental activities in a work like setting on a regular and continuing basis." (*Id.* at 703-04.) Dr. Hare also completed a questionnaire and opined that Goodwin has no useful ability to sustain an ordinary routine, work in coordination with or proximity to others, complete a normal workday and work week, perform at a consistent pace, get along with coworkers, and deal with normal work stress. (*Id.* at 706-09.) Further, according to Dr. Hare, Goodwin is unable to meet competitive standards with respect to maintaining attendance and being punctual, accepting instructions and responding to criticism, and interacting appropriately with the general public. (*Id.* at 706-07.) Dr. Hare also noted that, due to poor judgment and his history of drug and alcohol abuse, Goodwin cannot manage benefits in his best interest. (*Id.* at 708.) In September 2011, Dr. Talati endorsed Dr. Hare's report and questionnaire. (*Id.* at 1358-68.)

The ALJ afforded little weight to the opinions of Jordan and Burkert, and Drs. Talati and Hare. (*Id.* at 17-18, 24-26.)[7] The ALJ gave numerous reasons for discounting the opinions of these medical sources, including that: (1) their diagnoses were based on a medical condition which the record fails to establish; (2) their opinions were not supported by objective clinical findings, but were based on Goodwin's subjective complaints; (3) their opinions were inconsistent with the opinions of Dr. Moore and Meade; and (4) as Goodwin participated in regular outpatient mental health treatment, his physical symptoms improved. (*Id.*) After reviewing the evidence of record, the court concludes that the ALJ's decision to discount the opinions of Jordan and Burkert, as well as Drs. Talati and Hare is not supported by substantial evidence.

Initially, the court agrees with Goodwin that Dr. Moore's opinion is consistent with the opinions of Dr. Hare, Dr. Talati, and Jordan, and does not support the ALJ's mental residual functional capacity (RFC)[8]

---

[7] Although it is clear that the ALJ considered Dr. Russell's report, it appears that he did not assign a specific weight to Dr. Russell's opinion. (Tr. at 15, 23.)

[8] A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be

13

determination. (Dkt. No. 12 at 14; Tr. at 24, 579.) The ALJ concluded that Goodwin's mental limitations, "preclude only the most intense personal interaction." (Tr. at 24.) However, Dr. Moore opined that Goodwin has "difficulty dealing with stress and becomes easily overwhelmed." (*Id.* at 579.) Further, Dr. Moore's opinion indicates that Goodwin suffers limitations in interacting with and relating to others, using judgment, and maintaining a regular work schedule. (*Id.*) These are the same activities in which Dr. Hare, Dr. Talati, and Jordan opined limitations for Goodwin. (*Id.* at 1358-71.) Although Dr. Moore's report does not indicate the degree of such limitations, she states that "[t]he results of the examination appear to be consistent with psychiatric and stress related issues that may significantly interfere with [Goodwin's] ability to function on a daily basis." (*Id.* at 579.) Moreover, Dr. Moore's opinion is supported by the results of her mental status examination which included findings such as idiosyncratic manner of relating socially, restless motor behavior, pressured speech, somewhat inappropriate affect, and impaired attention and concentration. (*Id.* at 578-79); see 20 C.F.R. § 404.1572(c)(3), (4).

The ALJ also concluded that Goodwin's "complaints improved as he

---

affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

sought appropriate mental health treatment," and he "stopped seeking intensive treatment for his pain complaints following prolonged mental health treatment." (Tr. at 22.) However, this conclusion is not supported by Goodwin's treatment notes, which reflect that he made "no" or "poor" progress in his treatment goals and continued to complain of depressed moods four to five times a week, often related to heart pain, as well as problems controlling his anger. (*Id.* at 571-75, 664-93.) Moreover, in August 2011, Jordan reported that Goodwin's condition had worsened and his limitations were more severe than at the time of Jordan's December 2010 opinion. (*Id.* at 698.) Further, since February 2010, when Goodwin began receiving mental health treatment from Jordan, he visited the emergency room on numerous occasions, complaining of chest pain. (*Id.* at 424-26, 436-37, 439, 497, 505, 508, 614-24, 1272, 1285-88, 1303, 1319, 1334, 1342.)

It appears that the ALJ ultimately discounted the opinions of Jordan and Burkert, as well as Drs. Talati and Hare because they were based on an underlying medical condition, which the ALJ concluded was not a medically determinable impairment. (*Id.* at 17.) Indeed, Jordan noted that all of Goodwin's limitations were caused by pain. (*Id.* at 695-97.) Further,

15

Dr. Hare concluded that Goodwin "appears to meet the criteria for a diagnosis of [p]ain [d]isorder with both medical and psychological components which at this point apparently may be debilitating from a work standpoint." (*Id.* at 704.) As Goodwin has no medically determinable impairment that could cause such pain, the ALJ discounted these opinions. (*Id.* at 17, 24-25.) Goodwin argues that the medical evidence of record indicates that he suffers from a somatoform disorder.[9] (Dkt. No. 12 at 11-12.) However, the ALJ declined to find such a severe impairment because "[n]one of [Goodwin's] treating mental health care providers confirmed the diagnosis for a somatoform disorder or pain disorder associated with psychological factors." (Tr. at 17.) Nevertheless, based on Goodwin's treatment history, diagnoses, and the opinions of his treating and examining sources, the ALJ should have more thoroughly considered whether there is a psychological source of Goodwin's pain.[10] Thus, on

---

[9] Somatoform disorders are "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.07.

[10] The court notes that, in April 2009, nurse practitioner Little suggested that Goodwin's chest pain may be psychogenic. (Tr. at 357.) Thereafter, in July 2009, physician Erik Hiester noted that there were no findings on Goodwin's musculoskeletal examination that would indicate the etiology of his chest pain, and opined that "an element of anxiety [may] be contributing to his symptomatology." (*Id.* at 353-54.) Furthermore, in May 2011, physician Taseer Minhas conducted a neurological exam of Goodwin, which was normal, and suggested that Goodwin suffers from DaCosta's syndrome. (*Id.* at 651-52.) DaCosta's syndrome is "characterized by palpitations, dyspnea, a sense of fatigue, fear of effort, and discomfort

16

remand, the ALJ should obtain expert opinion on this issue. *Cf. Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004) (holding that remand for further administrative proceedings was appropriate, "utilizing whatever body of expert opinion, scholarly or otherwise, may be available to [the ALJ] or within the institutional memory of the Social Security Administration," where the ALJ improperly concluded that a somatoform disorder did not result in real pain). Moreover, the ALJ should provide good reasons, supported by the evidence of record, for the weight given to the various medical opinions. Further, if the ALJ concludes that Goodwin is disabled, he must consider whether Goodwin would still be disabled if he stopped using drugs or alcohol. *See* 20 C.F.R. § 404.1535.

B. **Remaining Findings and Conclusions**

Because Goodwin's remaining contentions may be impacted by the subsequent proceedings directed by this Order, it would be improper for the court to consider them at this juncture.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

---

brought on by exercise or even slight effort; considered by most authorities to be a particular presentation of anxiety neurosis (anxiety state), the physical symptoms being attributed to autonomic responses to anxiety." Dorland's Illustrated Medical Dictionary 150, 426 (28th ed. 1994).

17

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Order; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

May 22, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court